UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                            :
CAROL MELTON,                                               :
                          Plaintiff,                        :
                                                            :
                                                            :     **OPINION AND ORDER**
v.                                                          :
                                                            :     16 CV 9701 (VB)
                                                            :
POUGHKEEPSIE CITY SCHOOL DISTRICT                           :
and ASFCME LOCAL 3209,                                      :
                          Defendants.                       :
-------------------------------------------------------------x

Briccetti, J.:

     Plaintiff Carol Melton, proceeding pro se and in forma pauperis, brings this action under

Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights

Law ("NYSHRL"), alleging defendants Poughkeepsie City School District (the "District") and

ASFCME Local 3209 (the "Union") discriminated against her on the basis of race.

     Before the Court is the District's motion to dismiss the amended complaint pursuant to

Rule 12(b)(6). (Doc. #17).

     For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN

PART. In addition, the Court sua sponte dismisses the Union as a defendant.

     The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

     For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of

the amended complaint as true, and draws all reasonable inferences in plaintiff's favor.

1

Plaintiff, who identifies as "Black or African American" and "Asian," began working for the District as a teaching assistant in September 1999, and continues to hold that position to date. (Am. Compl. at 8).[1]

I.    2015-2016 School Year

Plaintiff alleges on September 1, 2015, she was "involuntarily transferred" instead of less-senior "non-Black" employees. (Am. Compl. at 14). In addition, on September 14, 2015, the District transferred plaintiff in an "emergency" to a "mandated class room" at a different school, rather than transfer a "non-Black" employee with less seniority. (Id.).

Plaintiff further alleges between September 15 and December 23, 2015, a "classroom teacher . . . treated non-Black employees (and students) in the classroom different than [plaintiff] and other Black employees in the same classroom," including by speaking to black employees in "a very disrespectful manner." (Am. Compl. at 14). The classroom teacher "[s]ubsequently . . . had [plaintiff] transferred from the classroom." (Id.).

On October 14, 2015, the District "took away [plaintiff's] paid (approximately $12,000 in pay) 2015-2016 school year extra assignment position . . . and gave it to a non-Black person which was out of seniority and violated past practice." (Am. Compl. at 14).

On December 23, 2015, the school principal, Nadine Dargan, met plaintiff in her classroom "to remove [plaintiff's] personal items and belongings in the middle of the day in front of other co-workers and students, which was embarrassing and mortifying," and leaving plaintiff "in limbo without an assigned class" just before the winter break. (Am. Compl. at 15).

---

[1]    Although the "Facts: Amendment" portion of plaintiff's amended complaint contains numbered paragraphs, other portions consist of materials—including plaintiff's EEOC charge and the right to sue letter—compiled together into a single document. For ease of reference, the Court cites to the Court's electronic case filing system page number stamped at the top of each page.

On December 31, 2015, plaintiff completed an Equal Employment Opportunity

Commission Intake Questionnaire ("EEOC charge"). (See Am. Compl. at 8-11).

Plaintiff's EEOC charge contains two allegations:

1. "Moving [plaintiff] and other Black employees to certain Mandated classes while not moving Caucasian employees to those classes even thou [sic] they state that all employees in our position is [sic] suppose [sic] to be in those said classes."

2. "Treating Caucasian employees (and Students) in the classroom different than [plaintiff] and other Black employees in the same classroom. Talking to Black employees in a very disrespectful manner while always being polite to the Caucasian employees in similar situations. Having [plaintiff] removed from the classroom."

(Id. at 9).

On April 28, 2016, plaintiff "received an inappropriate memo from [Ms. Dargan]

regarding [plaintiff's] husband." (Am. Compl. at 15). On April 29, 2016, Ms. Dargan asked

plaintiff to cover another class. After that class, plaintiff met with Ms. Dargan "upon the Deputy

Superintendent, Dr. Ronel Cook's directive." (Id. at 15). Ms. Dargan then "proceeded to have

an inappropriate meeting regarding [plaintiff's] husband." (Id.).

On May 17, 2016, the school assistant principal, Nicole Penn, asked plaintiff to cover

another class. Plaintiff "politely declined as per [her] rights in the contract," which was "the first

time that [plaintiff] declined to do an extra assignment." (Am. Compl. 16). Later that day, Ms.

Dargan directed plaintiff both orally and in writing to cover the class, even though "it was clearly

understood that another teacher assistant with less seniority, did not have to cover a class." (Id.).

On May 18, 2016, plaintiff received a letter from Ms. Dargan directing plaintiff to meet

with her the next day and to bring a union representative to the meeting.

Present during the May 19, 2016, meeting were plaintiff, Dr. Cook, Ms. Penn, Ms.

Dargan, and plaintiff's union representative. Only after the meeting was convened did plaintiff

and her union representative learn it was a disciplinary meeting. Plaintiff added in her

opposition to defendants' motion that she had never been the subject of a disciplinary hearing in her previous seventeen years of employment with the District. (Opp'n at pp. 45-46).

Plaintiff found Dr. Cook's presence and behavior at this meeting—including the fact that he "slammed his fist on the table" at one point during the meeting—to be very distressing. (Am. Compl. at 16). She alleges she "became very ill," that her "blood pressure . . . sho[]t up very high," and that each time she "thought or spoke about what transpired . . . [she] would have a relapse." (Id.). Plaintiff called in sick on May 20, 23-27, and 31, 2016.

When plaintiff returned to work in early June, there was an incident in which she felt Ms. Dargan had accused her of steeling school laptops. (See Am. Compl. at 17).

Plaintiff alleges in June 2016, "[t]he District, based on the actions of [Dr. Cook], in collusion with [plaintiff's] union, deducted 3½ days of pay" from her June 24, 2016, paycheck. (Am. Compl. at 17). The District allegedly refused to explain why plaintiff's pay was deducted for one of those days.

On June 30, 2016, Dr. Cook wrote in an email he was "not interested" in participating in a meeting with plaintiff because there was "a current complaint against [him] and the District." (Am. Compl. at 15). However, plaintiff alleges Dr. Cook nevertheless "continuously inserted himself into [plaintiff's] daily work activities." (Id. at 18).

On July 1, 2016, the District and Dr. Cook "hired union employees to fill summer extra assignment positions out of order of seniority and/or job title," and did not offer plaintiff one of these positions. (Am. Compl. at 18).

II.     2016-2017 School Year

Plaintiff alleges on October 25, 2016, she "was out on a sick day," but Dr. Cook "surveilled [her] in one school building and hours later followed [her] to another school

4

building" and "confronted" her. (Am. Compl. at 18). She alleges Dr. Cook told her she was required to attend a meeting the next day.

During the meeting on October 26, 2016, according to plaintiff, Dr. Cook "colluded" with the president of the Union and made inappropriate statements about union affairs. (Am. Compl. at 18). Plaintiff alleges she again only learned at the end of the meeting that it had been a disciplinary meeting. Dr. Cook allegedly wanted plaintiff to sign certain paperwork that "would have been detrimental to [plaintiff's] union membership." (Id. at 19).

On October 27, 2016, plaintiff participated in "union nominations & election." (Am. Comp. 19). She alleges Dr. Cook "stalked" and "proceeded to harass" plaintiff and her husband. (Id.). Dr. Cook later "ejected" plaintiff's husband from the school. (Id.).

Plaintiff alleges on February 1, 2017, she participated in another disciplinary meeting with Ms. Dargan, at which Ms. Dargan mentioned plaintiff's EEOC case.

III.     Right to Sue Letter

On November 1, 2016, plaintiff received a Notice of Right to Sue from the EEOC dated October 26, 2016. (See Am. Compl. at 13). She initiated this action on December 14, 2016.

**DISCUSSION**

I.     Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Id. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.     Exhaustion

Defendants argue all but one of plaintiff's claims should be dismissed for failure to exhaust. In particular, defendants admit plaintiff exhausted the first claim raised in her EEOC charge, namely that in September 2015, the District "[m]ov[ed] [plaintiff] and other Black employees to certain Mandated classes while not moving Caucasian employees to those classes even thou [sic] they state that all employees in our position is [sic] suppose [sic] to be in those

said classes" (the "First EEOC claim").  (Am. Compl. at 9).  However, defendants argue plaintiff did not exhaust the remainder of the claims in the amended complaint.

The Court disagrees.

Under Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter."  Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d 683, 686 (2d Cir. 2001) (citations omitted).  "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court."  Id. (quoting Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)).

However, "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency."  Shah v. New York State Dep't of Civil Serv., 168 F.3d 610, 614 (2d Cir. 1999) quoting Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993)).

"A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  Fitzgerald v. Henderson, 251 F.3d 345, 359–60 (2d Cir. 2001) (internal quotation marks omitted).  The Court's "focus should be on the factual allegations made in the EEOC charge itself, describing the discriminatory conduct about which a plaintiff is grieving."  Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (internal quotation marks omitted).  The central issue is whether the EEOC charge provided "adequate notice to investigate discrimination on both bases."  Deravin v. Kerik, 335 F.3d at 202.

Finally, "[a] claim alleging retaliation by an employer against an employee for filing a discrimination charge is one type of claim . . . recognized as 'reasonably related' to the

7

underlying discrimination charge." Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d at 686 (2d Cir. 2001) (internal quotation marks omitted) (emphasis added).

Applying these standards here, the Court concludes the allegations in plaintiff's amended complaint that were not included in her EEOC charge are reasonably related to the First EEOC claim, such that any EEOC investigation into the First EEOC claim would reasonably be expected to cover the other claims in the amended complaint. In particular, much like the First EEOC claim, many of plaintiff's other claims also relate to transfers and assignments to or from various classes. For example, plaintiff alleges on October 14, 2015, the District took away her extra assignment position and gave it to a non-black employee. On December 23, 2015, plaintiff alleges she was removed from a classroom and was without an assigned class for the winter break. In May 2016, plaintiff was required to cover another class even though it was her right—according to plaintiff—to decline to do so. Then on July 1, 2016, she was denied summer extra assignment positions to which she believed she was entitled. Plaintiff clarified in her opposition to defendants' motion that the District and the Union gave the summer extra assignment position to a non-black person with less seniority than plaintiff. (See Opp'n at 37).

These allegations are reasonably related to the First EEOC claim because any investigation into the First EEOC claim would likely examine other similar examples of work reassignments on the basis of race.[2]

---

[2]     The Court agrees that the second claim contained in plaintiff's EEOC charge—that in September 2015, a classroom teacher "talk[ed] to Black employees in a very disrespectful manner while always being polite to the Caucasian employees in similar situations" (Am. Compl. at 9)—is too vague to state a claim on its own. See Butts v. City of New York Dep't of Hous. Pres. & Dev., 990 F.2d at 1403. Nevertheless, this does not affect the Court's conclusion that the First EEOC claim provides sufficient predicate for plaintiff's other claims of discrimination and retaliation in the amended complaint.

Moreover, plaintiff alleges a string of retaliatory actions beginning a few months after she

filed her EEOC charge on December 31, 2015.  For example, plaintiff alleges:

- In April 2016, she was confronted in an "inappropriate" way about issues involving her husband, which plaintiff contends were not relevant to any of her work functions, and thus purely to retaliate against her.  (Am. Compl. at 15; see also Opp'n at 11).

- In May 2016, she was made to cover a class she did not want to cover, instead of other less-senior employees in her same position.  She alleges no other teaching assistants were made to do this.

- Beginning in May 2016 and periodically through February 1, 2017, she was made to participate in multiple, allegedly unfounded disciplinary meetings without advance warning, whereas she had never been subject to a disciplinary hearing in the previous seventeen years of her employment with the District.

- In June 2016, she was not paid for three and one half days of work.

- In July 2016, a non-black employee with less seniority than plaintiff was hired for a summer extra position, whereas plaintiff was not offered that opportunity.

- In October 2016, Dr. Cook allegedly stalked and harassed plaintiff.

The Court concludes these allegations reasonably relate to those raised in her EEOC

charge because they allegedly occurred in retaliation for having filed an EEOC charge.  See

Legnani v. Alitalia Linee Aeree Italiane, S.P.A, 274 F.3d at 686.

In addition, the Court rejects defendants' argument that these incidents cannot constitute

retaliation because they are too temporally removed from the date plaintiff filed her EEOC

charge.  The Second Circuit has "not drawn a bright line to define the outer limits beyond which

a temporal relationship is too attenuated to establish a causal relationship between the exercise of

a federal constitutional right and an allegedly retaliatory action."  Espinal v. Goord, 558 F.3d

119, 129 (2d Cir. 2009) (internal quotation marks and citation omitted).  Moreover, the Second

Circuit has noted on at least one occasion that a "seven-month gap" between the protected

activity and the adverse employment action was "not prohibitively remote."  Summa v. Hofstra

9

Univ., 708 F.3d 115, 128 (2d Cir. 2013) (citing <u>Grant v. Bethlehem Steel Corp.</u>, 622 F.2d 43, 45 (2d Cir. 1980)).

Here, plaintiff suffered at least one adverse employment action—namely, the denial of pay for several days of work—six months after she filed her EEOC charge. Moreover, this came in the midst of other unusual and allegedly retaliatory activity by the District—in particular, the commencement a string of allegedly unfounded disciplinary actions against plaintiff when she had been free from a single one in her previous seventeen years of employment.

Accordingly, liberally construing plaintiff's complaint in light of her <u>pro</u> <u>se</u> status, the Court concludes the factual allegations and claims asserted in plaintiff's amended complaint are reasonably related to the First EEOC claim.

III.    <u>Failure to State a Claim</u>

Defendants argue plaintiff's complaint should be dismissed for failure to state a claim.

The Court concludes plaintiff has stated claims of discrimination and retaliation but agrees with defendants that her hostile work environment claim is insufficient as a matter of law.

A.    <u>Discrimination and Retaliation Claims</u>

First, to state a Title VII <u>discrimination</u> claim, a plaintiff must "allege two elements: (1) the employer discriminated against [her] (2) because of [her] race, color, religion, sex, or national origin." <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 85 (2d Cir. 2015) (citing 42 U.S.C. § 2000e–2(a)(1)). "[A]t the pleadings stage of an employment discrimination case, a plaintiff has a <u>minimal</u> burden of alleging facts suggesting an inference of discriminatory motivation." <u>Id</u>. (internal quotation marks deleted) (emphasis in the original). "[A]n employer discriminates against a plaintiff by taking an adverse employment action against [her]." <u>Id</u>. "An adverse employment action is one which is more disruptive than a mere inconvenience or an

alteration of job responsibilities." Id. (internal quotation marks omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (internal quotation marks omitted).

Second, to state a Title VII retaliation claim, a plaintiff "must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against [her], (2) 'because' [she] has opposed any unlawful employment practice." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 90 (quoting 42 U.S.C. § 2000e–3(a)). In the context of a Title VII retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Id. (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). "As for causation, a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." Id. (citing 42 U.S.C. § 2000e–3(a)). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." Id.

Here, plaintiff's amended complaint contains at least three factual allegations that could constitute adverse employment actions. First, she alleges on October 14, 2015, the District took away her paid extra assignment position, effectively costing her approximately $12,000 in pay. Second, she alleges the District improperly deducted several days-worth of pay from her June 24, 2016, paycheck. Third, she alleges on July 1, 2016, the District did not hire her for summer extra assignment positions, instead hiring others out of seniority order. In addition, plaintiff alleges elsewhere in her complaint that the discrimination she describes was directed at her because of her race. Moreover, the June 24 and July 1, 2016, incidents both occurred after

plaintiff filed her EEOC charge on December 31, 2015, and plaintiff specifically alleges at least the July 1, 2016, decision to hire out of seniority order for summer positions was made in retaliation for filing the EEOC charge.  Finally, these incidents could plausibly dissuade a reasonable worker from bringing an EEOC charge.

Accordingly, plaintiff has stated claims for discrimination and retaliation.

B.     Hostile Work Environment Claim

"[T]o establish a hostile work environment claim under Title VII, a plaintiff must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Rivera v. Rochester Genesee Reg'l Transp. Auth., 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted).  The standard has objective and subjective elements: "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014).  "Whether a reasonable person would find a given work environment to be hostile depends on the totality of the circumstances; '[c]onsiderations include: (1) the frequency of the conduct, (2) the severity of the conduct, (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the employee's work performance.'"  Mormol v. Costco Wholesale Corp., 364 F.3d 54, 58 (2d Cir. 2004) (quoting Brennan v. Metro. Opera Ass'n, 192 F.3d 310, 318 (2d Cir. 1999)).

Here, plaintiff makes general allegations of behavior towards her that made her uncomfortable.  For example, plaintiff alleges Dr. Cook's behavior on May 19, 2016, was

aggressive, and she found it distressing, causing her to miss several days of work.  She also alleges Dr. Cook "constantly inserts himself into [plaintiff's] daily workday, instructs [her] principal to give [plaintiff] directives and constantly tries to bring [plaintiff] up on disciplinary charges."  (Am. Compl. at 19).  She further alleges Dr. Cook and the District "propogat[e] slanderous and libelous statements" against plaintiff "in a concerted collaboration," and that they and others in her Union leadership "encourage[] and permit[] others in establishing a hostile work environment."  (Id.).  In addition, plaintiff alleges certain District employees have neglected to acknowledge achievements she has achieved in her classroom.  (See id. at 19).

These allegations are vague and insufficient as a matter of law to constitute a workplace permeated with intimidation, ridicule, or insult.   Moreover, plaintiff does not plausibly allege Dr. Cook or others acted inappropriately toward her because of her race.  See Hill v. Rayboy–Brauestein, 467 F. Supp. 2d 336, 360 (S.D.N.Y. 2006) ("When a person only makes general allegations that African–Americans are treated differently in the workplace, those allegations are insufficient to support a hostile work environment claim.").  Finally, there is little suggestion the incidents described have interfered with plaintiff's work performance, as plaintiff continues to work for the District in the same position to date.  See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment . . . is beyond Title VII's purview.").

Accordingly, plaintiff's hostile work environment claim is dismissed.

IV.     State Law Claim

Defendants argue plaintiff's NYSHRL claim should be dismissed because plaintiff did not file a notice of claim with the District's Board of Education.

The Court disagrees.

"The Second Circuit is currently undecided on whether a NYSHRL claim against a school district requires a Notice of Claim." Berrie v. Bd. of Educ. of Port Chester-Rye Union Free Sch. Dist., 2017 WL 2374363, at *8 (S.D.N.Y. May 31, 2017) (Seibel, J.) ("Berrie").[3] In particular, the Second Circuit remanded one of its prior decisions "to consider whether the New York Court of Appeals' decision in Margerum v. City of Buffalo, 28 N.E.3d 515 (N.Y. 2015)—which held that 'a notice of claim need not be filed for a Human Rights Law claim against a municipality' if the action is not based in tort"—affected its analysis of whether a notice of claim is required for claims brought pursuant to New York Education Law Section 3813(1) against a school district. Id. (citing Carter v. Syracuse City Sch. Dist., 656 F. App'x 566, 567 (2d Cir. 2016) ("Carter") (summary order)). Since the Second Circuit's ruling in Carter, "courts within the Second Circuit have disagreed on Margerum's application." Id. (collecting cases).

Nevertheless, at least at this stage of the case, the Court agrees with Judge Seibel's holding in Berrie that "the plain language of Section 3813(1) . . . does not (unlike Section 3813(2)) require a formal notice of claim or refer to GML § 50-e." Id. at *8. Instead, Section 3813(1) requires that the claims must have been "presented to the . . . district or school within three months after the accrual of such claim" before the plaintiff files her complaint. As a result, the Court agrees with Judge Seibel "that the requirement is met by any document sufficiently formal and detailed for the District to investigate the claims." Berrie at *8.

Here, plaintiff filed a charge with the EEOC on December 31, 2015. This was sufficiently formal to prompt a District investigation.

---

[3]     Because plaintiff is proceeding pro se, she will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Accordingly, the Court declines to dismiss plaintiff's NYSHRL claim at this stage of the case.[4]

V.     Claims Against the Union

Plaintiff also names her Union, "ASFCME Local Union 3209," as a defendant in her amended complaint. However, there is no indication the Union has been served, nor has the Union appeared in the case.

A Court may not sua sponte dismiss a defendant for insufficient service of process unless the plaintiff is first given an opportunity to explain whether the defendant has been served, and if not, whether the plaintiff has good cause for its delay in effecting service. See Dupps v. Betancourt, 952 N.Y.S.2d 585, 587 (2012); Thompson v. Maldonado, 309 F.3d 107 (2d Cir. 2002). Accordingly, the Court does not dismiss the Union on Rule 12(b)(5) grounds at this time.

However, the Court may dismiss a defendant sua sponte for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted.").

Here, the Court has reviewed the amended complaint for potential claims against the Union and concludes plaintiff has failed to state a claim against it and, in any event, any theoretical claim against the Union has not been administratively exhausted.

First, plaintiff's only allegations involving the Union are that representatives from the Union participated in plaintiff's disciplinary meetings and that members of the Union "colluded" with the District or Dr. Cook to take action against plaintiff. (See Am. Compl. at 17-18). These

---

[4]     The Court notes the decision in Berrie is currently on appeal before the Second Circuit. Should the Second Circuit clarify this issue in defendants' favor, they may of course renew the argument at a later stage.

allegations are vague, do not state a claim of discrimination or retaliation, and are wholly conclusory.

Second, the Union is not mentioned in plaintiff's EEOC charge, thus any theoretical allegations against the Union cannot be "reasonably related" to those in the charge.

Finally, although the Union did not move to dismiss, plaintiff was on notice—by virtue of the District's motion to dismiss—of the issues of exhaustion and weaknesses with her complaint, and she was given an opportunity to be heard—and was heard by virtue of her opposition to the District's motion—on these same arguments.  See First Capital Asset Mgmt., Inc. v. Brickellbush, Inc., 219 F. Supp. 2d 576, 580 (S.D.N.Y. 2002), aff'd sub nom. First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) ("[W]hile dismissing a complaint as to a non-moving defendant is not an ordinary practice, a district court may dismiss claims sua sponte for failure to state a claim, at least so long as the plaintiff had notice and an opportunity to be heard on the issue.").

Under these circumstances, the Court concludes that sua sponte dismissal of the Union is appropriate here.

**CONCLUSION**

Defendant Poughkeepsie City School District's motion to dismiss is GRANTED with respect to plaintiff's hostile work environment claim. The motion is DENIED in all other respects. In addition, all claims against defendant "ASFCME Local Union 3209" are DISMISSED.

The Clerk is instructed to (i) terminate the motion (Doc. #17) and (ii) terminate "ASFCME Local Union 3209" as a defendant. Chambers will mail a copy of this Opinion and Order, along with all unpublished opinions cited herein, to plaintiff.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: December 18, 2017
      White Plains, NY

                        SO ORDERED:

                        _____

                        Vincent L. Briccetti
                        United States District Judge