UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CAROL MELTON,                                :
                    Plaintiff,             :
                              :      **<u>OPINION AND ORDER</u>**
v.                                           :
                              :      16 CV 9701 (VB)
POUGHKEEPSIE CITY SCHOOL DISTRICT,           :
                    Defendant.             :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff, proceeding <u>pro</u> <u>se</u> and <u>in</u> <u>forma</u> <u>pauperis</u>, brings claims against the

Poughkeepsie City School District ("PCSD") for race discrimination and retaliation in violation

of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights

Law ("NYSHRL").

      Now pending is PCSD's motion for summary judgment.  (Doc. #89).

      For the following reasons, the motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

## BACKGROUND

I.    <u>Materials Considered</u>

      PCSD submitted briefs, a statement of material facts, supporting affidavits and

affirmations, and exhibits.  Plaintiff submitted (i) a response to PCSD's Rule 56.1 statement,

which includes numerous unsworn factual statements (Doc. #105), and (ii) a "Motion Against

Defendant's Motion for Summary Judgment," which includes further unsworn factual statements

made in opposition to PCSD's motion (Doc. #104).  In addition, plaintiff attached several

exhibits to the latter submission, one of which is the unsworn written statement of a third party

named "Queen Byers-Schwartz." (Doc. #104 at ECF 18).[1] Queen Byers-Schwartz's statement includes the following language at the end of the statement: "I attest that the foregoing statement is true and correct."

The Court will not consider Queen Byers-Schwartz's unsworn statement or the unsworn factual statements made in plaintiff's other submissions.

"Section 1746 provides that an unsworn matter may be treated as sworn, provided that it is 'proven by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the form' of the model declaration provided." In re World Trade Ctr. Disaster Site Litig., 722 F.3d 483, 488 (2d Cir. 2013) (quoting 28 U.S.C. § 1746) (internal alterations omitted). Thus, a declarant must "(1) declare (or certify, verify, or state), (2) under penalty of perjury, (3) that the matter sworn to is true and correct." Id. (internal quotations omitted). "Inclusion of the language 'under penalty of perjury' is an integral requirement of the statute for the very reason that it impresses upon the declarant the specific punishment to which he or she is subjected for certifying to false statements." Id. (quoting 28 U.S.C. § 1746). Thus, "28 U.S.C. § 1746 requires that a certification of the truth of a matter be expressly made under penalty of perjury." Id.

None of plaintiff's unsworn materials meets Section 1746's requirements. Indeed, the only one that contains any of the necessary language is Queen Byers-Schwartz's unsworn statement, but that submission too was not sworn under penalty of perjury. Moreover, on December 10, 2018, PCSD filed and served on plaintiff a "Notice to Pro Se Litigant Who

---

[1] "Doc. #__ at ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

Opposes a Motion for Summary Judgment," and therefore plaintiff was on notice of her obligation to submit admissible evidence in response to PCSD's motion for summary judgment. Cf. Kendrick v. Greenburgh Hous. Auth., 2011 WL 1118664, at *6 n.11 (S.D.N.Y. Mar. 22, 2011) (holding plaintiff was "on notice that he needed to supply admissible evidence and provide a Rule 56.1 Statement" because he had been served a "Notice to Pro Se Litigant Who Opposes a Motion for Summary Judgment").[2]

Accordingly, the Court will not consider Queen Byers-Schwartz's unsworn statement or the unsworn factual statements in plaintiff's submissions. Nonetheless, the Court considers plaintiff's Rule 56.1 statement to the extent it relies on admissible evidence. The Court also does not deem true PCSD's statements unless supported by evidence in the record. See Gantt v. Horn, 2013 WL 865844, at *5 (S.D.N.Y. Mar. 8, 2013) (holding the Court "'must be satisfied that the citation to evidence in the record supports the movant's assertion,' i.e., that the materials underlying defendant's 56.1 statement themselves establish these facts" (quoting Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)).[3]

II.    Factual Background

The parties' submissions reflect the following factual background.

A.    Seniority

Plaintiff, who is African American, has been a teaching assistant for PCSD since approximately 1999. PCSD and plaintiff's union, the PCSD Paraprofessionals Association, are

---

[2]    Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

[3]    However, when plaintiff disputes in her unsworn statements PCSD's evidence, the Court so notes. As discussed further below, even if the Court considered those statements, none of them would create a material issue of fact precluding summary judgment.

parties to a collective bargaining agreement (the "CBA") which contains an article entitled,

"Seniority – Reduction in Force."  (Cook Aff. Ex. H at ECF 28).  The article states:

> Seniority – The Employer and the Union shall jointly establish a seniority list by job title. Seniority shall be the most important factor in filling vacant jobs in the School District and in transfers within existing jobs.  **The Employer shall have the authority to make involuntary transfers when deemed necessary by the School District for programmatic reasons.**

(Id.) (bold in original).

However, PCSD submitted several affidavits in which PCSD employees stated they did

not consider seniority in making teaching assistant assignment decisions.  According to Yvonne

Palmer, the building assistant principal for PCSD's high school from 2013–2016 and principal of

PCSD's extended school year ("ESY") summer program for the 2014–2015 and 2015–2016

school years, she never considered the relative seniority of teaching assistants, whether building-

wide or District-wide, in making regular or extra-duty teaching assistant assignments.  Ms.

Palmer states in her affidavit in support of summary judgment:  "All such decisions were based

solely upon the needs of the building and students and demonstrated abilities of the applicant,"

and she has "never even looked at a teaching assistant seniority list in [] choosing who[m] to

recommend for assignments."  (Doc. #94 ("Palmer Aff.") ¶ 6).

Likewise, Nadine Dargan, principal of Morse Elementary School ("Morse"), states in her

affidavit, "Teaching assistant seniority has never played a role in my making of assignments of

duties to teaching assistants at Morse."  (Doc. #93 ("Dargan Aff.") ¶ 6).  In addition, Dr. Ronel

Cook—PCSD's deputy superintendent of operations from 2015 to 2017—states seniority,

whether district-wide or building-wide, has never played a role in reassigning a teaching assistant

in a school building to different duties within that school building.

In addition, it is undisputed, including by plaintiff, that PCSD's policy for assigning staff

to an after-school or extended school year program, including the ESY and 21st Century

programs (discussed further below), was to reappoint all staff, including teaching assistants, to the positions they held in the previous year, unless the staff member received a bad evaluation.

B.     2014–2015 School Year

During the 2014–2015 school year, plaintiff was assigned to Clinton Elementary School ("Clinton") as a teaching assistant.  Plaintiff also served as an administrative intern for Ms. Palmer during that time.  In addition, plaintiff was appointed to serve as a teaching assistant for Clinton's 21st Century Community Learning Centers After-School and Saturday program ("21st Century program"), a position she also held in the 2013–2014 school year.  Plaintiff earned overtime pay at the 21st Century program.

C.     2015–2016 School Year

In the summer of 2015, Jason Gerard, the principal of the Circle of Courage School (the "Circle"), informed Dr. Cook that he was seeking a "skilled technology teacher with good student management skills."  (Cook Aff. ¶ 9).  The Circle was running an experimental educational program called the PEACE program, which was for disruptive students in seventh through twelfth grades.  Principal Gerard told Dr. Cook that he "had concerns regarding the Circle's student body's ability to utilize educational technology, especially in light of the disruptive student makeup of that student body."  (Id. ¶ 9).

Dr. Cook advised Principal Gerard that the District had not budgeted for, and could not afford to hire, such a teacher for the 2015–2016 school year.  Nevertheless, Dr. Cook raised the possibility of reassigning plaintiff to the Circle, as she "both had excellent technology skills as well as good student management skills."  (Cook Aff. ¶ 9).  In August 2015, Dr. Cook and Principal Gerard agreed to do so.  According to Dr. Cook, plaintiff "expressed agreement to the reassignment" to the Circle (id. ¶ 10); however, in plaintiff's unsworn response to PCSD's Rule

56.1 statement, plaintiff disagrees. In addition, as there was no 21st Century program at the Circle, Dr. Cook and Principal Gerard arranged plaintiff's schedule so that she could continue serving as a teaching assistant in the 21st Century program at Clinton, which would start in October 2015.

On or about September 13, 2015, Ms. Dargan, Morse's principal, notified Dr. Cook that she needed a teaching assistant for a special education class at Morse. According to Dr. Cook, plaintiff was the only teaching assistant not assigned to a mandatory classroom—that is, a special education class requiring one or more teaching assistants pursuant to student individual education plans. Thus, Dr. Cook transferred plaintiff from the Circle to Morse after two weeks at the Circle. Plaintiff, however, in her unsworn statements, states several other teaching assistants, some of whom were junior to her, also were not assigned to a mandatory classroom at that time.

Meanwhile, Clinton's 21st Century program, where plaintiff had worked and earned overtime pay during the 2014–2015 school year, was set to commence in October 2015. But plaintiff's schedule at Morse had her working until 2:45 p.m., and Clinton's 21st Century program began at 2:35 p.m. Thus, Dr. Cook contacted PCSD's then-superintendent of schools, Dr. Nicole Williams, and proposed allowing plaintiff to continue working at Clinton's 21st Century program, and informing Clinton plaintiff would be available at 2:50 p.m.

Dr. Williams rejected Dr. Cook's proposal, stating they could not "grant staff members early leave time from their regularly scheduled assignments to travel to work in another program for extra service pay." (Cook Aff. Ex. F at ECF 1). According to Dr. Williams, "It is an illegal practice to be paid, in this case, through 2:50 pm on regular time and be paid, starting at 2:35 pm, on overtime or extra service time." (Id.). Therefore, Dr. Williams directed Dr. Cook to work

with Clinton's principal to staff the 21st Century program with a qualified employee from Clinton. That employee ended up being a teaching assistant named Maria Brown, who had less seniority than plaintiff. Plaintiff was chosen to serve as a substitute to fill any teaching assistant vacancy that might arise in any PCSD school providing the 21st Century program.

In December 2015, the teacher for whom plaintiff was serving as an assistant requested plaintiff be removed from her classroom. According to Dr. Cook, teachers have the right to refuse to accept a teaching assistant assigned to their class. The Circle's new principal, Dr. Vijay Giles, specifically requested plaintiff be reassigned there, but plaintiff resisted the reassignment. In an email dated January 11, 2016, Dr. Cook wrote Principal Giles: "Legally, I could transfer Ms. Melton to the Circle for programmatic reasons, but am trying to be delicate and non-aggressive with the situation. I want to respect her feelings." (Cook Aff. Ex. D at 000325).[4] Thus, Dr. Cook allowed plaintiff to remain at Morse.

In addition, plaintiff was assigned to the Spring Break Academy at PCSD's middle school, a position that garnered her extra pay. However, plaintiff was selected to serve as a substitute teaching assistant, rather than a full-time teaching assistant, for the ESY program for the 2016 summer.

Plaintiff submitted a union grievance alleging PCSD had violated the CBA by involuntarily transferring her for non-programmatic reasons and by failing to consider seniority as the most important factor in deciding whom to transfer. Dr. Cook denied the grievance and the union did not submit the grievance to arbitration. Plaintiff submitted another grievance in

---

[4] "Doc. #__ at __" refers to the Bates-stamped numbers at the bottom of PCSD's exhibits.

June 2016 alleging PCSD failed to consider seniority in assigning extra work to her; Principal

Dargan denied the grievance, and the union again did not submit the grievance to arbitration.

D.     Substitute Teaching Opportunities

Plaintiff testified at her deposition that two Caucasian teaching assistants at Morse, Alice

Rahemba and Donna Roman, were allowed to substitute during the 2015–2016 and 2016–2017

school years for extra money while plaintiff was not.  (Pl. Dep. at 284).[5]  Plaintiff testified she

knows they were given those opportunities because she heard announcements to that effect.

However, plaintiff testified she could not recall for whom Rahemba substituted or in what school

year it happened.  Plaintiff also could not recall the school year in which she heard the

announcement as to Roman.

According to Principal Dargan, it is PCSD's policy to allow the teaching assistant

assigned to a classroom first preference to substitute when the teacher for the class is absent.

Thus, if Ms. Roman was substituting, it was likely because she was doing so for the teacher in

the class to which she was assigned.  Moreover, Principal Dargan states Ms. Rahemba was

assigned in the 2016–2017 school year to provide support for all of the first-grade teachers at

Morse, and therefore she was commonly assigned to cover those classes.  In addition, according

to Principal Dargan, plaintiff has declined requests to cover classes at Morse on multiple

occasions.

E.     Union Leave

In approximately mid-June 2016, Dr. Cook received notice that plaintiff had reported

taking three-and-a-half days of union leave, including one half-day and three full days.  Under

the CBA, all union officers and shop stewards, combined,  are entitled to up to twelve one-half

---

[5]     Plaintiff was represented at her deposition by limited pro bono counsel.  (Doc. #64).

days off, with pay, "for the purpose of conducting or participating in PPSPA and union business." (Cook Aff. Ex. H at ECF 26). Dr. Cook docked plaintiff's pay for those days because plaintiff's union informed him plaintiff was neither a union officer nor a shop steward authorized to use union leave. Plaintiff, however, testified her union lied to him, and that she was a shop steward at the time.[6]

Plaintiff filed a union grievance alleging PCSD had violated the CBA by failing to pay her for those days. Dr. Cook denied the grievance, and the union did not submit her grievance to arbitration.

F.    Promotions

Plaintiff has applied for numerous promotions while working for PCSD, but her applications were all rejected. At plaintiff's deposition, the parties identified and discussed at least six positions for which plaintiff had applied: (i) Director of Technology in September 2013; (ii) Coordinator of Elementary Instructional Technology in December 2015; (iii) Assistant Principal in April 2015; (iv) Elementary Instructional Leader/Assistant Principal in April 2015; (v) Dean of Students at the Middle School in June 2015; and (vi) Director for Family and Community Engagement in February 2016. In addition, plaintiff testified she also applied for several positions between 2012 and 2015, including (i) "Technology Teacher" (Pl. Dep. at 17); (ii) a "technician position" (id.); (iii) "another technology position" (id.); (iv) Director of Culture and Climate (id. at 18); and (v) Coordinator of Culture and Climate (id.).

According to Dr. Cook, plaintiff did not meet the minimum qualifications for the positions to which she applied while he served in higher level administrative positions in

---

[6]    The Court previously dismissed all claims against the union for failure to state a claim and failure to exhaust administrative remedies. (Doc. #33 at 16).

PCSD—that is, starting in the 2015–2016 school year.  Dr. Cook states some of those positions required a Transitional D certificate, including the positions of Assistant Principal, Dean of Students at the Middle School, and Director of Family and Community Engagement. Descriptions for the other positions likewise state they require state certifications.

When plaintiff applied for the position of Director for Family and Community Engagement in January 2016, Dr. Cook requested by email that plaintiff provide him with a copy of a Transitional D certificate.  Plaintiff responded by saying a district must offer a position to an individual before that individual can receive a certificate.  Dr. Cook responded by asking for documentation that she was attending an accredited college or university to acquire the certificate.  Plaintiff responded by saying she must first be offered a position before entering into a program.  Plaintiff testified at her deposition that she was previously enrolled in a Transitional D course, but by the time she applied for the Director for Family and Community Engagement position, she had not completed the course.  Moreover, according to Dr. Cook, plaintiff had advised him that by that point she had already left the program in which she had been enrolled.

G.    EEOC Charge

On December 31, 2015, plaintiff submitted an Equal Employment Opportunity Commission ("EEOC") intake questionnaire.  The EEOC sent PCSD a notice of charge of discrimination dated April 28, 2016, which PCSD stamped received on May 2, 2016.  On October 26, 2016, the EEOC dismissed plaintiff's charge of discrimination and issued plaintiff a notice of right to sue.

**DISCUSSION**

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery

materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law

. . . .  Factual disputes that are irrelevant or unnecessary" are not material and thus cannot

preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a

reasonable jury could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248.  The Court "is not to resolve disputed issues of fact but to assess whether

there are any factual issues to be tried."  Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir.

2010) (citation omitted).  It is the moving party's burden to establish the absence of any genuine

issue of material fact.  Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir.

2010).

If the non-moving party has failed to make a sufficient showing on an essential element

of his case on which he has the burden of proof, then summary judgment is appropriate.  Celotex

Corp. v. Catrett, 477 U.S. at 323.  If the non-moving party submits "merely colorable" evidence,

summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.  The

non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."

Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation

omitted).  The mere existence of a scintilla of evidence in support of the non-moving party's

position is likewise insufficient; there must be evidence on which the jury could reasonably find

for him.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws

all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc.

v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a

reasonable inference could be drawn in favor of the non-moving party on the issue on which

summary judgment is sought, summary judgment is improper.  See Sec. Ins. Co. of Hartford

v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that

would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736,

746 (2d Cir. 1998).

II.     Discrimination and Retaliation Claims

Plaintiff brings discrimination and retaliation claims arising out of:  (i) her involuntary

transfers to the Circle in August 2015 and to Morse in September 2015; (ii) PCSD's alleged

failure to assign her to the 21st Century program, ESY program, and other extra service

assignments that provide additional pay; (iii) PCSD's alleged failure to select plaintiff to perform

substitution assignments for additional pay for absent teachers; (iv) PCSD's alleged failure to

promote plaintiff; and (v) PCSD's decision to dock three-and-a-half days of pay for which

plaintiff had reported she had used union business days.

PCSD argues it is entitled to judgment as a matter of law on plaintiff's race

discrimination and retaliation claims under Title VII and the NYSHRL.

The Court agrees.

12

Assuming plaintiff can demonstrate a prima facie case of discrimination, PCSD has proffered evidence of legitimate, non-discriminatory reasons for all of its decisions. Moreover, plaintiff's evidence, when looked at as a whole, does not support a rational finding that PCSD's legitimate, non-discriminatory reasons were pretextual.

A.     The McDonnell Douglas Framework

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Likewise, Title VII's anti-retaliation provision "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids."  Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).  The familiar three-step McDonnell Douglas burden-shifting framework applies to both discrimination and retaliation claims.  Rosinski v. Am. Axle & Mfg., Inc., 402 F. App'x 535, 536 (2d Cir. 2010) (summary order).  Moreover, claims under Title VII and the NYSHRL are analyzed identically. Zacharowicz v. Nassau Health Care Corp., 177 F. App'x 152, 155 (2d Cir. 2006) (summary order).

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case.  Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000).  To establish a prima facie case of retaliation, a plaintiff must show "(1) he engaged in [protected activity]; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002).  To establish a prima facie case of

discrimination, a plaintiff must show "(i) membership in a protected class; (ii) qualifications for the position; (iii) an adverse employment action; and (iv) circumstances surrounding that action giving rise to an inference of discrimination." Collins v. N.Y.C. Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002). Plaintiff's "burden of establishing a prima facie case is not onerous, and has been frequently described as minimal." Norton v. Sam's Club, 145 F.3d 114, 118 (2d Cir. 1998) (internal citation omitted).

Once a plaintiff presents a prima facie case, the defendant then bears the burden of articulating a legitimate, non-discriminatory reason for the employment action. Weinstock v. Columbia Univ., 224 F.3d at 42. "If defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Treglia v. Town of Manlius, 313 F.3d at 721.

To satisfy the burden of showing pretext on summary judgment, a plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d at 42 (alterations omitted) (internal quotations omitted). "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id. "A plaintiff's evidence at the third step of the McDonnell Douglas analysis must be viewed as a whole rather than in a piecemeal fashion. Walsh v. N.Y.C. Hous. Auth., 828 F.3d 70, 76 (2d Cir. 2016).

B.    Legitimate, Non-Discriminatory Reasons for PCSD's Actions

The Court assumes plaintiff has presented sufficient evidence to establish a prima facie case, and will now address each of PCSD's proffered legitimate, non-discriminatory reasons for its actions.

1.    Transfers

PCSD has proffered evidence that Dr. Cook transferred plaintiff to the Circle in August 2015 because Jason Gerard, the Circle's principal, was seeking a skilled technology teacher with good student management skills to help with its experimental PEACE program. According to Dr. Cook, and undisputed by plaintiff, the PEACE program involved disruptive students in seventh through twelfth grades, and Principal Gerard had also expressed concern that the Circle's students lagged in their ability to use educational technology. According to Dr. Cook and also undisputed by plaintiff, plaintiff fit the bill to step in.

Likewise, PCSD has proffered evidence that in September 2015, plaintiff was the only teaching assistant not assigned to a special education class requiring one or more teaching assistants. Thus, when Nadine Dargan, principal of Morse, notified Dr. Cook that she required a teaching assistant for a special education class, it was necessary to transfer plaintiff to Morse.[7]

Moreover, PCSD has presented additional evidence that it recognized the burden the transfers had on plaintiff and tried to accommodate her. After plaintiff was removed from her classroom at Morse, the Circle's new principal, Dr. Vijay Giles, emailed Dr. Cook requesting specifically that plaintiff serve as a substitute teacher at the Circle because she "is a very reliable

_____

[7]    As noted earlier, plaintiff disputes in her unsworn statement that she was the only teaching assistant not assigned to a mandated classroom. Even if the Court could consider plaintiff's statements, plaintiff's statements only address whether PCSD failed to follow the CBA's seniority provision; as discussed further below, that would be insufficient to create a material issue of fact as to pretext.

'Tech' person who will be ideal to collaborate and work with students and teachers." (Cook Aff. Ex. D at 000325). However, even though Dr. Cook believed he legally could transfer plaintiff to the Circle for programmatic reasons, he told Principal Giles that he was "trying to be delicate and non-aggressive with the situation" and wanted "to respect [plaintiff's] feelings," and thus would not involuntarily transfer her. (Id.).

### 2. Extra Assignments

PCSD has proffered evidence that it did not reappoint plaintiff to the 21st Century program because her schedule at Morse overlapped with the program. In an email chain between Dr. Cook and Dr. Williams, Dr. Williams stated she believed it was illegal to pay plaintiff for two jobs for the same time period. That email chain also evidences Dr. Cook's explicit intention to implement a consistent district-wide practice. Dr. Cook wrote: "[T]here needs to be consistency on how we treat our employees. This issue has discrimination written all over it and I am requesting clear written direction moving forward." (Cook Aff. Ex. F at 000114).

### 3. Substitution Assignments

PCSD has presented evidence that it ascribes to a practice of appointing the teaching assistant assigned to a classroom to substitute for the teacher for that classroom when the teacher is absent.[8]

### 4. Promotions

PCSD has presented evidence that plaintiff was rejected from the positions for which she applied from 2015 to 2017 because she did not have any certifications that those positions

---

[8]     Plaintiff has not presented sufficient facts that would allow PCSD to give further detail as to its legitimate, non-discriminatory reasons for choosing substitute teachers at Morse. Although Plaintiff testified at her deposition that Ms. Roman and Ms. Rahemba, two Caucasian teaching assistants, were given substitute assignments instead of her, she could not remember when those incidents occurred, and did not state for which teachers the teaching assistants substituted.

required and was not enrolled in a class to obtain any such certifications.[9]  In addition to Dr. Cook's affidavit to that effect, he attached to his affidavit an email chain between him and plaintiff asking plaintiff for documentation that she had a Transitional D certificate or was enrolled in a Transitional D program after she applied for the position of Director for Family and Community Engagement.

Plaintiff has not presented any evidence she was qualified for any of the positions for which she applied.  Rather, plaintiff testified at her deposition that to get a Transitional D certification, she must have first been offered a position.  Plaintiff has offered no evidence in support of that assertion besides her own testimony and, more importantly, no evidence disputing that Dr. Cook believed those positions required a Transitional D certificate.  In contrast, PCSD submitted job postings for all five positions for which plaintiff testified she applied after 2015, and all of them state they required certifications plaintiff admitted she does not have.  (Cook Aff. Ex. R; Pl. Dep. at 308).[10]  Further, the New York State Education Department's description of a Transitional D certificate states a person "must be enrolled in a New York State Transitional D program" to receive the certificate—which plaintiff was not when her applications were rejected.  (Cook Aff. Ex. S).  Moreover, the job description does not include a requirement that someone be offered a job before obtaining a certificate.  Finally, PCSD submitted a "TEACH" system record showing the person who was awarded the job of Director for Family and Community

---

[9]      Plaintiff has not presented any evidence as to her job applications from before 2015.

[10]     Plaintiff attached to one of her submissions a printout of a letter of intent for a technology teacher position at the Poughkeepsie Middle School dated November 27, 2016.  (Doc. #104 at ECF 58).  However, plaintiff has not provided any other facts surrounding this application, including to whom she sent it (it is not clear from the email address in the printout), whether anyone received it, whether she spoke to anyone about the application, what the job description was, or what qualifications the job required.

Engagement— who is also African-American—had a Transitional D certificate when she got the job.

### 5. Union Leave

The CBA's provision regarding "Union Leave" only entitles the union's "President or designee, all union officers, and shop stewards" to take union leave. (Cook Aff. Ex. H at ECF 26). Further, PCSD has presented evidence Dr. Cook docked plaintiff's pay for three-and-a-half days because he believed under the CBA, plaintiff, who was neither a union officer nor a shop steward, was not entitled to take union leave. According to Dr. Cook, he spoke with the president of plaintiff's union, who confirmed plaintiff was not a union officer or shop steward authorized to use union business time. Moreover, attached to Dr. Cook's affidavit is an email from the union president from later in the year confirming the same information. (Cook Aff. Ex. O at 000292). Finally, plaintiff admitted at her deposition Dr. Cook relied on information he received from the union in deciding to dock plaintiff's pay.

### C. Pretext

Plaintiff's evidence, when looked at as a whole, does not support a rational finding that PCSD's legitimate, non-discriminatory reasons were pretextual.

First, the record reveals no evidence, direct or circumstantial, suggesting PCSD's legitimate, proffered reasons for its actions were false.

Second, nearly all of the decision-makers involved are of the same race as plaintiff, who is African-American. "Courts draw an inference against discrimination where the person taking the adverse action is in the same protected class as the effected employee." Baguer v. Spanish Broad. Sys., Inc., 2010 WL 2813632, at *11 (S.D.N.Y. July 12, 2010), aff'd, 423 F. App'x 102 (2d Cir. 2011) (summary order). Among those people are: (i) Dr. Williams, who decided

18

plaintiff should not be reassigned to Clinton's 21st Century program; (ii) Ms. Palmer, who ran

the ESY program in 2015 and 2016; (iii) Principal Dargan, who assigned substitutes to

classrooms at Morse; and (iv) Dr. Cook, who transferred plaintiff to the Circle and then to

Morse, docked plaintiff's pay for the union days she took off, and told plaintiff that she did not

meet the minimum requirements for any of the positions for which she applied after 2015.[11]

Third, throughout plaintiff's papers, plaintiff argues PCSD's failure to abide by the

CBA's seniority provision demonstrates PCSD discriminated and retaliated against her.

Although a plaintiff may raise an inference of discrimination by presenting "evidence that an

employer departed from its usual employment practices and procedures in dealing with that

particular employee," Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 97 (2d Cir. 1999), that

evidence alone is insufficient to show pretext, Bucknell v. Refined Sugars, Inc., 82 F. Supp. 2d

151, 158 (S.D.N.Y.), aff'd, 225 F.3d 645 (2d Cir. 2000) (summary order). Indeed, pretext

"normally focuses upon factual questions such as whether the asserted reason for the challenged

action comports with the defendant's policies and rules, whether the rule applied to the plaintiff

has been applied uniformly, and whether the putative non-discriminatory purpose was stated

---

[11]     Plaintiff testified Dr. Cook harassed her by docking her pay and following her to school
in October 2016. Plaintiff's unsworn statements also contain allegations Dr. Cook interrogated
her and her husband. Indeed, attached to one of plaintiff's submissions is a so-called "CEASE
AND DESIST" letter alleging Dr. Cook had a "history and a pattern of repeated harassment and
retaliation towards me," including by bringing disciplinary charges against her. (Doc. #104 at
45). The Court previously dismissed plaintiff's hostile work environment claims (Doc. #33 at
13), and these allegations do not otherwise lend credence to plaintiff's discrimination or
retaliation claims because they do not suggest any of PCSD's legitimate, non-discriminatory
reasons for its actions were pretextual. Further, even if these allegations did bear on plaintiff's
claims, they are too vague to support them. Cf. Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir.
1985) (holding "conclusory allegations of discrimination are insufficient" to withstand summary
judgment).

only after the allegation of discrimination." DeMarco v. Holy Cross High Sch., 4 F.3d 166, 171 (2d Cir. 1993).

Here, even if there is a dispute of fact as to whether PCSD abided by the CBA's seniority provision, that dispute is immaterial because plaintiff has failed to present any additional evidence of discrimination or retaliation.

Moreover, the only admissible evidence in the record demonstrates PCSD applied the same rules uniformly as to all of its employees. Ms. Palmer states she did not consider the relative seniority of any applicant in deciding whom to recommend for teaching assistant positions for the ESY program when she ran it in 2015 and 2016:

> [R]elative seniority of teaching assistants, whether building-wide or District-[w]ide, played no role or factor in the teaching assistant assignments decisions made, whether those assignments were regular teaching assistant assignments or extra-duty assignments. All such decisions were based solely upon the needs of the building and students and demonstrated abilities of the applicant. I have never even looked at a teaching assistant seniority list in my choosing who[m] to recommend for assignments.

(Palmer Aff. ¶ 6). Likewise, Principal Dargan states teaching assistant seniority did not play a role in her assigning of duties at Morse, and Dr. Cook states seniority, whether district-wide or building-wide, has never played a role in reassigning a teaching assistant in a school building to different duties in that school building.

Further, plaintiff has not submitted any evidence (or said in her unsworn statements) that PCSD followed seniority as to some employees but not others. In fact, plaintiff testified at her deposition there were both African-American and Caucasian substitute teaching assistants who were senior to some of the teaching assistants who were given full time ESY positions, lending further credibility to the fact that PCSD simply did not consider seniority.

Accordingly, PCSD is entitled to judgment as a matter of law on plaintiff's discrimination and retaliation claims.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #89) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: September 23, 2019
      White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge